# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
June 12, 2012 Session

## STATE OF TENNESSEE v. MICHAEL ANTHONY JEFFRIES

### Appeal from the Circuit Court for Obion County
### No. CC-11-CR-67    William B. Acree, Jr., Judge

### No. W2011-02653-CCA-R3-CD  - Filed July 31, 2012

A grand jury indicted appellant for possession of a substance containing .5 grams or more of cocaine with intent to sell within 1,000 feet of a school, in violation of Tennessee Code Annotated section 39-17-417 (a)(4), a Class A felony.  Following an unsuccessful motion to suppress the evidence, appellant entered a guilty plea to possession of .5 grams or more of cocaine with intent to sell, a Class B felony.  Pursuant to the plea agreement, the trial court sentenced appellant to eight years and 270 days and placed him on probation.  As a condition of the plea agreement, appellant reserved the right to certify several questions of law challenging the validity of the search that yielded the evidence against him.  Following our review, we affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

ROGER A. PAGE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JEFFREY S. BIVINS, JJ., joined.

Martin E. Dunn, Dyersburg, Tennessee, for the appellant, Michael Anthony Jeffries.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; Thomas A. Thomas, District Attorney General; and Jim Cannon, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Facts and Procedural History

An Obion County grand jury indicted appellant for possession of .5 grams or more of cocaine within 1,000 feet of a school.  As set forth fully below, police apprehended appellant

at the apartment of another individual after they searched the residence with consent of the lessee. Police recovered cash, cellular telephones, and two bags of crack cocaine during the search. Appellant filed a motion to suppress the evidence against him, alleging he had an expectation of privacy in the apartment and the search exceeded the scope of the lessee's consent.

On October 28, 2011, the trial court held a hearing on appellant's motion to suppress the seized evidence. Appellant called Investigator Chris Cummings of the Union City Police Department as his first witness. He testified that on January 5, 2011, an individual entered the police department and reported a domestic disturbance or fight in the parking lot. Investigator Cummings went outside to assess the situation. When he arrived in the parking lot, he observed a vehicle driven by Derrick Byrd in which appellant was a passenger. Mr. Byrd had been involved in a domestic dispute with his girlfriend. Investigator Cummings attempted to get Mr. Byrd out of the vehicle, but Mr. Byrd locked the door. Investigator Cummings then walked around to the passenger side where appellant was sitting. Appellant's window was rolled down, and Investigator Cummings leaned into the vehicle in an attempt to turn off the engine. Mr. Byrd "hit the gas," causing Investigator Cummings to jump out of the way. A short pursuit followed. Police later located Mr. Byrd's abandoned vehicle in the parking lot of East Gate Village.

Officers ordered that the vehicle be towed. Investigator Cummings searched Mr. Byrd's criminal record and found that he had no outstanding warrants against him. Investigator Cummings did not know appellant at the time and did not have any reason to arrest him. Approximately thirty minutes to one hour later, police received an anonymous tip that Mr. Byrd and appellant were inside an apartment at East Gate Village. Officers approached the apartment and knocked on the door. Chiquita Albright, the lessee of the apartment, answered and walked outside, closing the door behind her. Investigator Cummings advised Ms. Albright as to why they were there and asked if anyone was inside the apartment. She said, "No, they're not here," but simultaneously signaled him that someone was inside. Investigator Cummings testified that it was a fairly common practice for one to verbally deny having information then signal otherwise to police because they do not want others to hear them giving information to police.

The officers asked Ms. Albright for consent to "go in and look for the individuals" for whom they were searching, and she consented, opened the door, and allowed them to enter. Investigator Cummings was in the main area of the apartment when he heard Officer Faulkner yelling, "Get your hands on your head," and "Don't move." Officer Faulkner was in a bathroom and brought appellant out of the bathroom and into the main area of the apartment. Investigator Cummings performed a weapons frisk and spoke to appellant. Investigator Cummings recognized appellant as the passenger in Mr. Byrd's vehicle but did

not know his name at that point. Investigator Cummings was in the middle of the weapons frisk when Officer Faulkner called out to Officer Ben Burnett, "[W]hoa, look at this." Officer Faulkner had found drugs in the garbage can in the bathroom and showed the drugs to Investigator Cummings by lifting the garbage can and showing him the contents. Investigator Cummings then conducted a full search of appellant's person, which yielded one "rock" of crack cocaine in appellant's pocket. Appellant did not make a formal statement to officers. He simply told them, "It's not mine," referring to the cocaine in the bathroom. Appellant admitted that the "rock" in his pocket belonged to him.

During the course of the investigation, Investigator Cummings ascertained that the only occupant of the apartment was Ms. Albright. He found no evidence that appellant was staying at her apartment. He had no personal property in the apartment and did not receive mail at her address.

Officer Joey Faulkner testified that he was in the East Gate Village area when he received the call about an anonymous tip, so he waited in the parking lot for other officers to arrive. Investigator Cummings was the first officer to arrive. Officer Faulkner testified that Investigator Cummings knocked on the door twice before Ms. Albright answered. After Investigator Cummings told Ms. Albright why they were there, Officer Faulkner recalled that she answered that one of the men had been there and left but that she "had company." She did not specify the identity of the "company." Officer Faulkner stated that Ms. Albright then consented to a search of her apartment.

When Officer Faulkner entered the apartment, he immediately saw a door to his left that opened to a very small, dark room. He turned on his flashlight, looked in, and saw appellant. Appellant was standing between the bathtub and the toilet, fully clothed. Officer Faulkner walked appellant to Investigator Cummings and finished searching the bathroom. In doing so, he turned on the bathroom light and checked behind the shower curtain. As he was looking in the bathroom, he observed "a fairly large bag of crack in the trash can." The garbage can liner was fresh, and he did not have to move anything around to see the drugs. Officer Faulkner explained that the trash can was a small bathroom-sized can and was not located under the sink. The trash can was sitting close to the wall by the sink. He then called out to the other officers that he had found drugs. He photographed the drugs and took the bag into evidence. He also looked into the bedroom before walking back to the living room.

Officer Ben Burnett testified that he was involved in the search of Ms. Albright's apartment. When he first entered the apartment, he checked a closet that was located in the entry area. Officers continued to search the apartment after Officer Faulker found appellant and the drugs because the primary suspect was not yet in custody.

Appellant testified he was in Union City looking for employment. He had been friends with Mr. Byrd since 1989, and they were seeking employment together. Ms. Albright was the godmother of Mr. Byrd's girlfriend. Appellant arrived in Union City on December 18, 2011, and stayed with a relative of Mr. Byrd's girlfriend. He visited Ms. Albright's apartment for the first time on December 23rd and stayed for one or two hours. The purpose of the visit was to become acquainted with Ms. Albright because she was a relative of Mr. Byrd's girlfriend. He next visited Ms. Albright's apartment on January 4, 2011, around 10:30 p.m. to "play some cards, drink some beers, and relax . . . ." He spent the night at her apartment. While in the apartment, appellant used the bathroom, put his beer in her refrigerator, and sat in the living room. He brought a cellular telephone, cigarettes, and a lighter with him, which he left unattended when he went to the bathroom and kitchen. Ms. Albright allowed appellant and Mr. Byrd to remain in her apartment unattended while she left for twenty to thirty minutes to buy them a "bottle." On January 5th, when appellant left Ms. Albright's apartment with Mr. Byrd, he left a jacket behind.

On the day of his arrest, appellant returned to Ms. Albright's apartment and was arrested shortly after noon. Appellant testified that from the time he arrived on January 4th until the time of his arrest on January 5th, he had been away from Ms. Albright's apartment for approximately two to two and a half hours. During that period, he was upstairs at a different apartment drinking beer and watching a game. He further testified that he left Ms. Albright's apartment around 10:00 a.m. on January 5th to go somewhere with Mr. Byrd. Appellant acknowledged that he was present with Mr. Byrd at the police station during the initial altercation and when the chase ensued. According to appellant, during the police chase he told Mr. Byrd that he should stop the car. Appellant tried to get out of the vehicle, but it was going "a hundred and something miles" per hour. He testified they drove to Ms. Albright's apartment. While inside, appellant told Mr. Byrd that they were going to jail. He smoked a cigarette while Mr. Byrd paced the floor. Mr. Byrd left the apartment between fifteen and thirty minutes later to "go check on his girl."

Appellant further testified that when the police arrived, he was using the bathroom. He did not turn the light on because the bathroom was illuminated by light from the hallway. While he was in the bathroom, he heard Ms. Albright open the front door. Appellant was about to exit the bathroom a few minutes later when Ms. Albright re-entered her apartment with police officers. He said that Officer Faulkner did not have a flashlight and that he was on his way out of the bathroom when the officer grabbed him. Appellant also testified that the garbage can was located under the bathroom sink.

At the conclusion of the hearing, the trial court denied the motion to suppress, citing the following reasons: (1) the lessee of the apartment consented to the search; (2) appellant enjoyed no expectation of privacy in the property; (3) probable cause with exigent

-4-

circumstances supported the search; and (4) the evidence was recovered in plain view of the officer. Appellant entered a conditional guilty plea, attempting to reserve eight certified questions of law: (1) whether appellant had an expectation of privacy in the area searched by police; (2) whether police officers exceeded the scope of the consent given by the lessee; (3) whether police had consent to search the area where they found cocaine; (4) whether probable cause supported the search that led police to discover the cocaine; (5) whether exigent circumstances allowed the search that led police to discover the cocaine; (6) whether the cocaine was in plain view of law enforcement officers; (7) whether the search was reasonable; and (8) whether the cocaine found by police should be excluded because of an illegal search and seizure.

## II. Analysis

## A. Standard of Review

Rule 3(b)(2) of the Tennessee Rules of Appellate Procedure permits a defendant to plead guilty while reserving the right to appeal a certified question of law that is dispositive of the case. In doing so, a defendant must also comply with the requirements of Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure. Rule 37 outlines the following requirements:

(i)     the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

(ii)     the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

(iii)     the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv)     the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case.

Tenn. R. Crim. App. 37(b)(2)(A)(i)-(iv).

Our courts have explicitly defined the prerequisites to an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a [Tennessee Rule of Appellate Procedure] 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to [Tennessee Rule of Criminal Procedure] 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

*State v. Bowery*, 189 S.W.3d 240, 245 (Tenn. Crim. App. 2004) (quoting *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988)). The *Preston* requirements are mandatory. *Bowery*, 189 S.W.3d at 245-46 (citing *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996)). Failure to comply with the requirements results in dismissal of the appeal. *Id.* (citing *Pendergrass*, 937 S.W.2d at 837). Our supreme court has clearly required strict compliance with *Preston*:

> [O]ur prior decisions demonstrate that we have never applied a substantial compliance standard to the *Preston* requirements as urged by the defendant in this case. To the contrary, we have described the requirements in *Preston* for appealing a certified question of law under Rule 37 of the Tennessee Rules of

Criminal Procedure as "explicit and unambiguous." Moreover, we agree with the State that a substantial compliance standard would be very difficult to apply in a consistent and uniform manner, and therefore would conflict with the very purpose of *Preston*. We therefore reject the defendant's argument that substantial compliance with the requirements set forth in *Preston* is all that is necessary in order to appeal a certified question of law.

*State v. Armstrong*, 126 S.W.3d 908, 912 (Tenn. 2003) (citations omitted).

One requirement of a properly certified question is that "'the defendant, the state, and the trial court are of the opinion that the certified question of law is dispositive of the case.'" *State v. Dailey*, 235 S.W.3d 131, 134 (Tenn. 2007) (quoting Tenn. R. Crim. P. 37(b)(2)(A)(iv)). The question is dispositive "when the appellate court 'must either affirm the judgment [of conviction] or reverse and dismiss [the charges].'" *Dailey*, 235 S.W.3d at 134 (alteration in original) (quoting *State v. Walton*, 41 S.W.3d 75, 96 (Tenn. 2001); *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984)). An issue is never dispositive when this court may exercise the option to reverse and remand. *Wilkes*, 684 S.W.2d at 667. This court "'is not bound by the determination and agreement of the trial court, a defendant, and the State that a certified question of law is dispositive of the case.'" *Dailey*, 235 S.W.3d at 134-35 (quoting *State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003)). The appellate court must make an independent determination that the certified question is dispositive. *Id.* at 135 (citing *Preston*, 759 S.W.2d at 651). Thus, the issue becomes whether "*the record on appeal* demonstrates how [the certified] question is dispositive of the case." *Id.* (citing *Preston*, 759 S.W.2d at 651) (emphasis in original). Reviewing these questions under the stringent standards of *Preston*, we address the following certified questions.[1]

## B. Certified Questions

The facts underlying appellant's certified questions were developed during a hearing on the motion to suppress the evidence against him. The trial court issued verbal and written findings. A trial court's findings of fact at a hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). As the trier of fact, the trial court is in a better

---

[1] Appellant attempted to certify eight questions of law with respect to the search of Ms. Albright's apartment and subsequent seizure of two items of contraband. While he lists the eight questions as "Issues Presented for Review" in his brief, the "Argument" section addresses only six questions. Pursuant to Rule 27(a)(7) of the Tennessee Rules of Appellate Procedure and Rule 10(b) of the Rules of the Court of Criminal Appeals, the remaining two issues are treated as waived in this court. Notwithstanding, the two remaining issues are entwined with the issues addressed herein.

position to assess the witnesses' credibility, determine the weight of the evidence and the value to be afforded it, and resolve any conflicts in the evidence. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). However, the trial court's conclusions of law are not binding on this court. *State v. Randolph*, 74 S.W.3d 330, 333 (Tenn. 2002). Further, the trial court's applications of law to the facts are questions of law that we review de novo. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000).

At a hearing on a motion to suppress evidence recovered as a result of a warrantless search, the State must prove that the search was reasonable. *State v. Coulter*, 67 S.W.3d 3, 41 (Tenn. Crim. App. 2001). To carry its burden, the State must prove that law enforcement conducted the warrantless search or seizure pursuant to one of the narrowly-defined exceptions to the warrant requirement. *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000). On appeal, the prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn therefrom. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The defendant bears the burden of establishing that the evidence contained in the record preponderates against the trial court's findings of fact. *Braziel v. State*, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

1. Did Appellant have an expectation of privacy in the area searched by police?

Appellant maintains that he had an expectation of privacy in Ms. Albright's apartment, thus, he has standing to contest the search. Our courts have held:

> [T]he fact that a person is an overnight guest in a residence or an apartment, standing alone, is sufficient to clothe the guest with a legitimate expectation of privacy in the premises sufficient to challenge the search and any resulting seizure. However, a "casual visitor" or a "transient party guest" does not have a reasonable expectation in the host's residence or apartment.

*State v. Transou*, 928 S.W.2d 949, 958 (Tenn. Crim. App. 1996); *see United States v. Dix*, No. 94-4065, 1995 WL 351182, at *2 (6th Cir. June 9, 1995) ("As a casual, albeit frequent, visitor to his sister's apartment, who did not keep clothing there, who did not receive mail there, and who had no key, Dix had no reasonable expectation of privacy in the premises.").

The record reflects that appellant had been in Union City since December 18, 2010, looking for employment. From December 18, 2010, until January 4, 2011, he stayed with Mr. Byrd at another location. On the night of January 4, 2011, appellant arrived at Ms. Albright's apartment at approximately 10:30 p.m. He did not have an overnight bag or any significant personal items. He spent the night at Ms. Albright's apartment on January 4th, left her apartment on January 5th, and returned to the apartment following the encounter with

police officers. The trial court found that although appellant spent the night at Ms. Albright's apartment the previous night, appellant did not enjoy an expectation of privacy in the residence because at the time of the arrest he was in the apartment to hide from law enforcement.

The items in appellant's possession on the night of January 4th were typical items that an individual would carry on a regular basis: a cellular telephone, cigarettes, a lighter, and a jacket. The purpose of appellant's visit to Ms. Albright's apartment was to "play some cards, drink some beers, and relax . . . ." Appellant's reliance on the fact that he moved freely about the apartment, storing and retrieving his beer from the refrigerator and using the bathroom, is unpersuasive to our determination of whether he had a reasonable expectation of privacy in the apartment. Appellant's leaving his jacket behind is also not pertinent. A party guest who spends the night at a residence does not clothe himself with an expectation of privacy therein. *State v. Patterson*, 966 S.W.2d 435, 441 n.5 (Tenn. Crim. App. 1997); *Transou*, 928 S.W.2d at 957-58 (Tenn. Crim. App. 1996). Appellant failed to establish that he resided at her apartment or was an overnight guest rather than a "party" guest. *Patterson*, 966 S.W.2d at 441 n.5. Appellant did not have a reasonable expectation of privacy that would confer standing to challenge law enforcement's search of Ms. Albright's apartment.

Assuming that appellant had an expectation of privacy in Ms. Albright's apartment, giving him standing to contest the search, his argument still fails. A co-habitant of a dwelling may give valid consent to search the property, but the scope of consent given may not exceed that of his or her authority over the property. *United States v. Matlock*, 415 U.S. 164, 171 n.7 (1974). However, a co-habitant may validly consent to search areas of common authority, meaning

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Id*.; *see also State v. Bartram*, 925 S.W.2d 227, 231 (Tenn. 1996). Officer Faulkner located appellant in the bathroom, an area of "joint access." Simply put, Ms. Albright had the authority to give valid consent to law enforcement officers to search her apartment. Even if appellant had an expectation of privacy therein, Ms. Albright's consent extended, at the very least, to common areas of joint access, such as the bathroom.

While our answer to appellant's first certified question is dispositive of all others, we will nevertheless address appellant's remaining questions to facilitate any further appellate review.

## 2. Did police have consent to search the area where they found cocaine?

It is undisputed that police officers did not have a warrant to search Ms. Albright's apartment. Our supreme court has held:

> [U]nder both the federal constitution and our state constitution, a search without a warrant is presumptively unreasonable, and any evidence obtained pursuant to such a search is subject to suppression unless the state demonstrates that the search was conducted under one of the narrowly defined exceptions to the warrant requirement. Moreover, Tennessee has approved of and adopted exceptions to the requirement of obtaining a valid search warrant, including search incident to arrest, plain view, stop and frisk, hot pursuit, search under exigent circumstances, and others. Well settled among the exceptions to the warrant requirement, and the one with which we are engaged here, is consent to search.

*State v. Cox*, 171 S.W.3d, 174, 179 (Tenn. 2005) (internal citations omitted). Furthermore, to justify a search, the consent given must be "unequivocal, specific, intelligently given, and uncontaminated by duress or coercion." *State v. Simpson*, 968 S.W.2d 776, 784 (Tenn. 1998) (quoting *State v. Brown*, 836 S.W.2d 530, 547 (Tenn. 1992)).

The record clearly reflects that Ms. Albright gave Investigator Cummings consent to search her apartment. Investigator Cummings testified with regard to Ms. Albright's verbal denial that anyone was present in her home, followed by her gesture acknowledging that someone was, indeed, in her apartment. He further testified that it was a common practice used when an individual does not want others to overhear him or her giving information to police. The trial court credited the officer's testimony, concluding that the lessee gave consent for officers to search the apartment. Appellant did not present any evidence at the suppression hearing to refute or contradict Investigator Cummings's testimony. Appellant did not carry his burden of proving that the evidence in the record preponderates against the trial court's findings of fact. Moreover, no evidence was presented to the trial court to suggest that Ms. Albright's consent to search was equivocal, vague, unintelligently given, or made under duress or coercion. Thus, appellant cannot prevail on the issue of consent to search. We find that Ms. Albright's consent to search her apartment was valid.

## 3. Did police officers exceed the scope of the consent given by the lessee?

In conducting a consensual search, officers must not exceed the scope of the consent given. *State v. Troxell*, 78 S.W.3d 866, 871 (Tenn. 2002). In determining whether law enforcement's search has exceeded the scope of the consent given, courts use the objective "reasonable person" standard, considering any express or implied limitations regarding the time, duration, area, or degree of police activity necessary to accomplish the purpose of the search. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991).

Appellant argues that law enforcement officers exceeded the scope of Ms. Albright's consent to search her apartment. Investigator Cummings explained to Ms. Albright that they were looking for two men and sought consent to search her premises for that reason. Appellant cites *United States v. Flores*, 193 Fed.App. 597, 699 (6th Cir. 2006), for the proposition that because officers were searching for a person, it was reasonable for them to only search in places where a person could hide, thus, searching the bathroom garbage can exceeded the scope of consent. His argument misapprehends the pivotal fact that police were searching for *two* individuals. Upon Officer Faulkner's removing appellant from the bathroom, Investigator Cummings ascertained that appellant was not, in fact, the primary individual for whom he was searching. Thus, the primary individual had still not been apprehended, and officers continued their search. Officer Faulkner returned to the bathroom to search behind the shower curtain for the second individual. In continuing the search, Officer Faulkner observed the drugs in plain view in a garbage can.

We find that the police were justified in continuing to search Ms. Albright's apartment after apprehending appellant because Mr. Byrd, the target of the search, was still at large. Officers were reasonable in returning to the bathroom to look behind the shower curtain, where, by happenstance, Officer Faulkner observed the crack cocaine. The officers' search did not exceed the scope of Ms. Albright's consent.

> 4. Did probable cause with exigent circumstances allow the search that led police to discover the cocaine?[2]

Our holding with respect to the issue of consent to search obviates review of this certified question regarding exigent circumstances. Nonetheless, we will address appellant's remaining question to facilitate any further appellate review.

---

[2] This issue combines two of appellant's certified questions, whether there was probable cause for the search and whether exigent circumstances existed to allow the search. We are addressing the two questions simultaneously because, pursuant to *State v. Richards*, 286 S.W.3d 873, 878 (Tenn. 2009), there must be probable cause in the presence of exigent circumstances; exigency cannot stand alone.

As noted above, there are several exceptions to the presumption that a warrantless search is invalid, including searches incident to lawful arrests and searches supported by probable cause in the presence of exigent circumstances. *State v. Richards*, 286 S.W.3d 873, 878 (Tenn. 2009) (citing *State v. Day*, 263 S.W.3d 891, 901 n.9 (Tenn. 2008); *State v. Berrios*, 235 S.W.3d 99, 104 (Tenn. 2007)). "'Exigent circumstances are limited to three situations: (1) when officers are in 'hot pursuit' of a fleeing suspect; (2) when the suspect presents an immediate threat to the arresting officers or the public; or (3) when immediate police action is necessary to prevent the destruction of vital evidence or thwart the escape of known criminals.'" *State v. Adams*, 238 S.W.3d 313, 321 (Tenn. Crim. App. 2005) (quoting *State v. Givens*, No. M2001-00021-CCA-R3-CD, 2001 WL 1517033, at *3 (Tenn. Crim. App. Nov. 29, 2001), *perm. app. denied* (Tenn. May 6, 2002)). In *State v. Meeks*, 262 S.W.3d 710, 723 (Tenn. 2008), our supreme court added an additional situation, "to render emergency aid to an injured person or to protect a person from imminent injury," to the list of circumstances that would establish exigent circumstances. The mere existence of one of these circumstances does not, in and of itself, validate a warrantless search; the State must also show that "the exigencies of the situation made the search imperative." *State v. Yeargan*, 958 S.W.2d 626, 635 (Tenn. 1997). The question of whether the exigent circumstances were sufficient to justify a warrantless search is a mixed question of law and fact that we review de novo. *Meeks*, 262 S.W.3d at 722.

The following guidance from our supreme court is instructive on this issue:

[I]n assessing the constitutionality of a warrantless search, the inquiry is whether the circumstances give rise to an objectively reasonable belief that there was a compelling need to act and insufficient time to obtain a warrant. The exigency of the circumstances is evaluated based upon the totality of the circumstances known to the governmental actor at the time of the entry. Mere speculation is inadequate; rather, the State must rely upon specific and articulable facts and the reasonable inferences drawn from them. The circumstances are viewed from an objective perspective; the governmental actor's subjective intent is irrelevant. The manner and the scope of the search must be reasonably attuned to the exigent circumstances that justified the warrantless search, or the search will exceed the bounds authorized by exigency alone.

*Id.* at 723-24. The trial court held that "exigent circumstances existed to search the property further because [appellant] was evading the police at the time for some reason which suggests he was doing something unlawful at the time he was taken into custody and the search occurred." We agree. Investigator Cummings testified that Mr. Byrd was suspected of having been involved in a domestic disturbance or fight in the parking lot of the police

department. When Investigator Cummings tried to question Mr. Byrd, he and appellant fled the scene. Appellant testified that during the chase, Mr. Byrd drove approximately one hundred miles per hour. The police received information that Mr. Byrd and the appellant were in Ms. Albright's apartment. Because of the actions of Mr. Byrd and the appellant in fleeing the scene, evading arrest, and hiding from police, we conclude that exigent circumstances existed for officers to search Ms. Albright's home without a warrant to thwart the escape of known criminals.

### E. Was the cocaine in plain view of law enforcement officers?

Reiterating his argument that the search exceeded Ms. Albright's consent, appellant contends that the cocaine seized by Officer Faulkner was not admissible as evidence under plain view doctrine. For the plain view doctrine to apply, the following requirements must be met: "(1) the officer did not violate constitutional mandates in arriving at the location from which the evidence could plainly be seen; (2) the officer had a lawful right of access to the evidence; and (3) the incriminating character of the evidence was 'immediately apparent . . . .'" *State v. Brock*, 327 S.W.3d 645, 684 (Tenn. Crim. App. 2009) (citations omitted).

Appellant relies on a combination of the first two factors of *Brock* in arguing that Officer Faulkner was not legally in a position to view the evidence. We addressed this issue above, finding that because Mr. Byrd was not yet in custody, Officer Faulkner was justified in returning to the bathroom from which appellant was removed and continuing to search behind the shower curtain. Officer Faulkner, upon leaving the bathroom, inadvertently observed the cocaine located in the garbage can, in plain view.

The trial court credited Officer Faulkner's testimony over appellant's testimony that the garbage can was located in a cabinet beneath the sink. The evidence does not preponderate against the trial court's findings. The trial court ruled that the contraband was in plain view of the officer and was thus excepted from the warrant requirement. We agree with the trial court. The cocaine found in the bathroom was admissible against appellant under the plain view doctrine.

### F. Improperly Certified Questions

Appellant listed the following two questions as certified questions. However, he did not address them in his brief to this court, and the trial court did not rule on them in its order denying appellant's motion to suppress. Therefore, these questions are not properly before this court:

1.      Whether the search of Ms. Albright's apartment was reasonable; and

2.      Whether the evidence should be excluded because the search was illegal.

As noted above, the two waived issues are intermingled with and overlap the issues we have previously determined.

## CONCLUSION

Based on the record, the oral arguments, the parties' briefs, and controlling case law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE