# STATE of Tennessee

v.

# Richard E. BOWERY.

Court of Criminal Appeals of Tennessee, at Knoxville.

March 16, 2004 Session.

Aug. 6, 2004.

Roger A. Woolsey, Greeneville, Tennessee, for the appellant, Richard E. Bowery.

Paul G. Summers, Attorney General & Reporter; John H. Bledsoe, Assistant Attorney General; and Cecil D. Mills, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JAMES CURWOOD WITT, JR., JJ., joined.

The defendant, Richard E. Bowery, entered a plea of guilty to one count of driving a commercial vehicle while under the influence of alcohol, *see* Tenn.Code Ann. § 55–50–408, reserving the right to appeal the trial court's denial of his motion to suppress the results of the breathalyser test pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(i). The judgment of the trial court is affirmed.

At approximately 2:00 a.m. on December 9, 2002, Officer Lee Cutshall of the Tennessee Highway Patrol Commercial Vehicle Enforcement Division was working at a commercial vehicle weight and inspection station when the defendant's tractor-trailer was randomly selected for further inspection. Officer Cutshall smelled alcohol on the defendant and, as a result, asked if he would submit to a breathalyser test. After being advised of his right to refuse the test, the defendant nevertheless consented. Results indicated that the defendant had a blood alcohol level of .10%.

The defendant was originally charged in the General Sessions Court with one count of driving a commercial vehicle while under the influence of alcohol. During a bench trial, which was made a part of the record on appeal, Officer Cutshall testified that when the defendant "ran over" the "weigh in motion" scale, his vehicle was randomly selected by a computerized system for further inspection and he was directed to the stationary scale. At the stationary scale, Officer Cutshall instructed the defendant to move his vehicle out of

the way and to bring his log book inside the office. The officer testified that he had detected an odor of alcohol on the defendant as soon as he came into the weigh station but had chosen not to ask the defendant to submit to a breathalyser test at that time. Instead, he had elected to conduct a safety inspection of the defendant's vehicle. He explained that he delayed the request for a breathalyser examination until after the inspection because "I don't want a gentleman that suspects that I know he's been drinking behind the wheel of that truck while I'm walking around it." After the inspection, Officer Cutshall and the defendant returned to the weigh station, where he provided the defendant with the implied consent form and asked him to submit to a breathalyser examination. During questioning by the defense, the officer acknowledged that he had relied solely upon the smell of alcohol as the reason to request consent for the test.

At the conclusion of the officer's testimony, which was the only proof offered by the state, the defendant moved to dismiss the charge, arguing that the officer did not have reasonable grounds to believe that the defendant had been drinking before asking him to submit to the breathalyser test. While the transcript indicates that there was a skip in the tape immediately after defense counsel made the motion, it is apparent that the motion was denied.

The defendant testified in the General Sessions Court that during the safety inspection, Officer Cutshall climbed into the cab of his truck and asked whether an air freshener was inside. The defendant recalled that he informed the officer that he had an air freshener. He testified that he denied having alcoholic beverages in his refrigerator, but acknowledged that he gave the officer permission to look inside. He claimed that after the safety inspec-

tion, he returned to the weigh station, where Officer Cutshall asked if he had been drinking. The defendant remembered having denied any use of alcohol and conceded that he had agreed to take a breathalyser test. During cross-examination, the defendant acknowledged that he had consumed two beers some thirteen hours before the test.

At the conclusion of the trial, the General Sessions Court ruled that the defendant was guilty of driving a commercial vehicle while under the influence of alcohol. *See* Tenn.Code Ann. § 55–50–408. The General Sessions Court imposed a sentence of eleven months and twenty-nine days, to be suspended to probation after service of forty-eight hours' incarceration, and a fine of $350. The court ordered the defendant to attend driving school and forfeit his driver's license for one year. The defendant then appealed his conviction to the Greene County Criminal Court and filed a motion to suppress the results of the breathalyser test, arguing that the officer did not have reasonable grounds to request the test. No testimony was offered at the suppression hearing in Criminal Court. The transcript of the General Sessions trial was submitted as the supporting evidence.

After reviewing the transcript, the trial court denied the motion to suppress, observing that the rules regulating tractor-trailer trucks are "pretty strict" so as to "protect motorists and vehicles." While pointing out that the blood alcohol level required for conviction of driving a commercial vehicle under the influence of alcohol, .04%, is lower than for non-commercial drivers, the trial court ruled as follows:

> [W]hen this officer and this defendant were in the places that they had a right to be, that the defendant was being checked for trucking regulations, and the officer says he smelled alcohol, then

he has a reason at that point, I think without any question, to ask the defendant to take a breathalyzer test....

[I]f it's smelled, they have a right to make a further inquiry and require a blood alcohol test.

Approximately two weeks later, the defendant entered a plea of guilty to the single count of driving a commercial vehicle while under the influence of an intoxicant. As part of his plea agreement, the defendant certified a question of law under Tennessee Rule of Criminal Procedure 37. That rule provides in pertinent part as follows:

An appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction:

\* \* \*

(2) upon a plea of guilty or nolo contendere if:

(i) the defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the state and of the court the right to appeal a certified question of law that is dispositive of the case[.]

Tenn. R.Crim. P. 37(b)(2)(i). The judgment form filed in the Criminal Court indicates that the certified question is an attachment. A memo from defense counsel to the prosecutor appended to the judgment contains the following question:

Whether the Trial Court erred in denying the Defendant's Motion to Suppress all evidence concerning the taking of the intoximeter by the Defendant and the introduction into evidence of the results of the intoximeter test given to the Defendant as part of the State's proof in chief in this case. That the Defendant asserts that the commercial vehicle enforcement officer (who later arrested him for driving under the influence in a commercial vehicle) at the suppression

hearing before the Trial Court did not offer to the Trial Court that he had reasonable grounds to believe that the Defendant had been driving under the influence of intoxicants and/or drugs as required under the provisions of T.C.A. § 55–10–406 before requiring the Defendant to submit to an intoximeter at the weigh station on Interstate 81 in Greene County, Tennessee. While the State of Tennessee asserts that a commercial vehicle enforcement officer may require any commercial vehicle operator to submit to an intoximeter at any time, the Defendant asserts that the commercial vehicle enforcement officer must first have reasonable grounds to believe the Defendant has been driving under the influence of an intox[ic]ant and/or drugs before he can require the commercial vehicle operator to take an intoximeter test to determine the level of alcohol in his blood. In that there is not sufficient evidence to convict the Defendant, if the results of the intoximeter are suppressed and not allowed into evidence, this issue would be dispositive of the case and the case against the Defendant would be required to be dismissed without the intoximeter results allowed into evidence. Furthermore, the District Attorney General and the Trial Judge both agree and consent to this certified question of law and agree that the issue presented is dispositive of this case.

Less than a month later, the defendant filed a motion to reconsider and/or motion for new trial, again asking the trial court to suppress the results of his breathalyser test. The trial court denied the request and, in a separate order, stated the question to be reserved:

Whether the Trial Court erred in denying the Defendant's Motion to Suppress any and all evidence including the results of the intoximeter test to deter-

mine the blood alcohol content of the Defendant at the time of his arrest in view of the officer's failure to testify under oath and any evidence offered by the State as to the law enforcement officer having reasonable grounds to believe the Defendant to have driven while under the influence of an intoxicant or drug prior to requesting the Defendant take the intoximeter pursuant to T.C.A. § 55–10–406. Stated differently[,] whether the Trial Court erred in failing to suppress the introduction of the intoximeter results as part of the State's proof in chief in light of the commercial vehicle enforcement officer's failure to demonstrate that he in fact had reasonable grounds to believe that the Defendant had been driving under the influence of intox[ic]ants and/or drugs and whether the provisions of T.C.A. 55–10–406 require an arresting officer to make that determination before requiring a commercial vehicle operator to take the intoximeter.

It is the second version of the question that the defendant has presented in his brief on appeal.

In *State v. Preston,* our supreme court established the procedural conditions necessary for consideration of the merits of a question of law certified pursuant to Rule 37:

> This is an appropriate time for this Court to make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R.Crim. P. 37(b)(2)(i) or (iv). Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to Tenn. R.Crim. P. 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

759 S.W.2d 647, 650 (Tenn.1988).

Later, in *State v. Pendergrass,* 937 S.W.2d 834 (Tenn.1996), our high court

ruled that the *Preston* requirements were mandatory and that the failure to comply would result in dismissal of the appeal. Pendergrass, who pled guilty to charges of possession of marijuana with intent to sell, possession of cocaine, and possession of drug paraphernalia, attempted to certify for appeal an evidentiary question arising from the search of her residence. Although the trial court entered a post-judgment order attempting to certify the question, our supreme court, emphasizing the necessity of strict adherence to the *Preston* guidelines, held that the failure to include the certified question in the judgments was fatal:

> Contrary to the explicit and unambiguous requirements of *Preston*, the three January 15, 1993 final judgments in this case, from which the time for a Tenn. R.App. P. 3 appeal began to run, make no reference at all to a reservation of a dispositive question of law for appellate review. Moreover, the judgments do not contain an identification of the scope and limits of the legal issue reserved as required. Nor do the judgments contain any statement in satisfaction of the reservation requirements, nor do they contain any statement that the question is dispositive, all explicitly required by *Preston*. Finally, these judgments do not refer to or incorporate any other independent document which would satisfy the *Preston* requirements. Accordingly, as the Court of Criminal Appeals found, the judgments entered on January 15, 1993, completely fail to comply with Rule 37 and *Preston*.

*Id.* at 837. In *Pendergrass,* our supreme court did recognize, however, the trial court's authority to correct the final judgment pursuant to Tennessee Rule of Criminal Procedure 36, so long as it still had jurisdiction to do so. *Id.* at 837–38. Most recently, in *State v. Armstrong,* 126 S.W.3d 908, 912 (Tenn.2003), our high court reiterated that strict compliance with *Preston* is required:

> [O]ur prior decisions demonstrate that we have never applied a substantial compliance standard to the *Preston* requirements as urged by the defendant in this case. To the contrary, we have described the requirements in *Preston* for appealing a certified question of law under Rule 37 of the Tennessee Rules of Criminal Procedure as "explicit and unambiguous." Moreover, we agree with the State that a substantial compliance standard would be very difficult to apply in a consistent and uniform manner, and therefore would conflict with the very purpose of *Preston*. We therefore reject the defendant's argument that substantial compliance with the requirements set forth in *Preston* is all that is necessary in order to appeal a certified question of law.

(Citations omitted.) Nevertheless, our supreme court determined that the trial court had complied with the *Preston* guidelines by filing a corrective order nunc pro tunc two days after the entry of the final judgment but before the defendant had filed his notice of appeal. *Id.*

■ In this case, the first version of the certified question fully complies with the requirements of *Preston.* It is specifically referenced in and attached to the judgment form. The attachment contains an explicit statement that both the state and the trial court agree that the certified question is dispositive of the case and consent to the appeal. Both documents were filed on the same date. While *Armstrong* stands for the proposition that the trial court may amend the judgment form to include the certified question so long as it retains jurisdiction, and comply with *Preston,* that is not what occurred in this case. Although it appears that the trial court,

while still retaining jurisdiction, entered the order containing the second version of the question in response to the defendant's motion for new trial, it did not enter an amended judgment form indicating a certified question of law different from the original certification. In our view, the order does not reserve a certified question of law in compliance with the guidelines of *Preston* and its progeny. While the questions presented in each order are similar, it is the specific question attached to the judgment form that will be addressed in this appeal.

 It is our interpretation that the defendant actually presents two issues: (1) whether the provisions of Tennessee Code Annotated section 55–10–406(a)(1) apply under these circumstances and (2) whether the officer, in this instance, had reasonable grounds to believe that the defendant was driving under the influence of an intoxicant when he asked him to submit to the breathalyser exam. The defendant asserts that the statutory provision does apply and that the smell of alcohol, the only ground cited by Officer Cutshall as his reason for requesting the test, is not, in and of itself, "reasonable grounds" as contemplated thereby. While the question presented on appeal suggests that the defendant seeks suppression of all evidence "concerning the taking" of the breathalyser test, his sole argument in the trial court was that the officer did not have reasonable grounds to request the test. In this appeal, he has presented no other argument "concerning the taking" of the test. The state submits that the provisions of section 55–10–406 notwithstanding, the officer was justified in asking the defendant to submit to a breathalyser examination when he smelled alcohol on his person. The basis of its argument is that 49 C.F.R. § 392.5(a)(2) declares that it is unlawful to drive a commercial vehicle with "any measured alcohol concentration or detected presence of alcohol." In the alternative, the state argues that the smell of alcohol provided Officer Cutshall reasonable grounds to request the test pursuant to section 55–10–406. In a supplemental brief, the state for the first time contends that the certified question is not dispositive because the results of the breathalyser test would not be subject to suppression even if the officer failed to comply with the guidelines of section 55–10–406.

 The standard of review applicable to suppression issues is well established. When the trial court makes a finding of facts at the conclusion of a suppression hearing, the facts are accorded the weight of a jury verdict. *State v. Stephenson*, 878 S.W.2d 530, 544 (Tenn.1994). The trial court's findings are binding upon this court unless the evidence in the record preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn.1996); *see also Stephenson*, 878 S.W.2d at 544; *State v. Goforth*, 678 S.W.2d 477, 479 (Tenn. Crim.App.1984). Questions of credibility of witnesses, the weight and value of the evidence and resolution of conflicts in evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from the evidence. *Odom*, 928 S.W.2d at 23. This court's review of a trial court's application of law to the facts, however, is conducted under a de novo standard of review. *See State v. Walton*, 41 S.W.3d 75, 81 (Tenn. 2001); *State v. Crutcher*, 989 S.W.2d 295, 299 (Tenn.1999).

Tennessee Code Annotated section 55–10–406, otherwise known as the "Implied Consent Law" provides, in pertinent part, as follows:

Any person who drives *any motor vehicle* in the state is deemed to have given consent to a test for the purpose of determining the alcoholic or drug content of that person's blood; provided, that such test is administered at the direction of a law enforcement officer having reasonable grounds to believe such person was driving while under the influence of an intoxicant or drug, as defined in § 55–10–405.

Tenn.Code Ann. § 55–10–406(a)(1) (emphasis added).

■■■■ The cardinal rule of statutory construction is to effectuate legislative intent without restricting or expanding a statute's coverage beyond its intended scope. *Riggs v. Burson,* 941 S.W.2d 44, 54 (Tenn.1997); *Owens v. State,* 908 S.W.2d 923, 926 (Tenn.1995). All rules of interpretation are to that end. *Browder v. Morris,* 975 S.W.2d 308, 311 (Tenn.1998); *Davenport v. Chrysler Credit Corp.,* 818 S.W.2d 23, 27 (Tenn.Ct.App.1991). In examining statutory language, courts should apply the ordinary and plain meaning of words. The meaning of a statute is to be determined not from specific words in a single sentence or section but from the act in its entirety in light of the general purpose of the legislation; any interpretations should express the intent and purpose of the legislation. *National Gas Distrib., Inc. v. State,* 804 S.W.2d 66, 67 (Tenn. 1991); *Loftin v. Langsdon,* 813 S.W.2d 475, 478–79 (Tenn.Ct.App.1991). Courts presume that the legislature is aware of both its prior enactments and the law as it exists when new legislation is passed. *Wilson v. Johnson County,* 879 S.W.2d 807, 810 (Tenn.1994). Statutes are to be construed with reference to pre-existing law and should not be interpreted to change it further than the express terms or the necessary implications. *Harman v.*

*Moore's Quality Snack Foods, Inc.,* 815 S.W.2d 519, 523 (Tenn.Ct.App.1991).

Tennessee Code Annotated section 55–8–101 defines a motor vehicle as "every vehicle which is self-propelled." Tenn. Code Ann. § 55–8–101(30). Elsewhere, commercial motor vehicle is described as "a motor vehicle or combination of motor vehicles used in commerce to transport passengers or property." Tenn.Code Ann. § 55–50–102(12). Here, the plain language of section 55–10–406 establishes that it applies to "[a]ny person who drives any motor vehicle." Tenn.Code Ann. § 55–10–406(a)(1). It is our view, therefore, that the statute applies equally to the drivers of both commercial and non-commercial vehicles.

■■■■ Our next inquiry is whether Officer Cutshall had reasonable grounds to ask the defendant to submit to a breathalyser test. While no definition of "reasonable grounds" is provided in the statute, the term has been used interchangeably with "probable cause" by the courts of this state. *See, e.g., State v. Melson,* 638 S.W.2d 342, 350 (Tenn.1982); *State v. Humphreys,* 70 S.W.3d 752, 761 (Tenn. Crim.App.2001). This court has previously determined that factors such as the smell of alcohol, unsteady gait, bloodshot eyes, slurred speech, and unsuccessful performance of field sobriety tests constitute probable cause to request blood alcohol testing. *See, e.g., Humphreys,* 70 S.W.3d 752 (driving behavior, demeanor, and failure to complete the field sobriety tests satisfactorily); *State v. James Stacey Carroll,* No. W2001–01464–CCA–R3–CD, 2002 WL 1841627 (Tenn.Crim.App., at Jackson, Aug. 9, 2002) (driving behavior, slow responses to questioning, the odor of alcohol, and empty beer cans); *State v. Michael Ray Swan,* No. M2000–00539–CCA–R3–CD, 2001 WL 430601 (Tenn.Crim.App. Apr. 27, 2001) (driving behavior and odor of alco-

hol). While these cases generally involve more than just the smell of alcohol as grounds, none dealt with the offense of driving a commercial vehicle while under the influence. As the trial court observed, the .04% blood alcohol level required for conviction for driving under the influence in a commercial vehicle is significantly lower than that required for driving under the influence in a non-commercial vehicle, .10% at the time of the defendant's arrest. Because of the relatively low blood alcohol level required for conviction, it is our view that the evidence does not preponderate against the trial court's finding that Officer Cutshall had reasonable grounds to request the breathalyser test. Because the officer possessed reasonable grounds pursuant to section 55–10–406, it is not necessary to address the state's argument that 49 C.F.R. § 392.5(a)(2) provided a separate justification for the request.

As indicated, the second version of the certified question is similar to the first. It differs in that it includes a complaint regarding Officer Cutshall's failure to testify under oath. The defendant made no such complaint in the trial court and has not argued the issue on appeal. Under these circumstances, this issue, if an issue at all, must be classified as waived. *See* Tenn. Ct.Crim.App. R. 10(b) ("Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."); *State v. Adkisson,* 899 S.W.2d 626, 634–35 (Tenn.Crim.App.1994) (holding that a petitioner may not assert one ground for relief in the trial court and then pursue a new or different theory on appeal); *see also* Tenn. R.App. P. 27(a)(7); *State v. Hammons,* 737 S.W.2d 549, 552 (Tenn.Crim.App.1987). Moreover, there is no indication in the record that the officer did not testify under oath at the General Sessions trial. *See Murff v. State,* 221 Tenn. 111, 425 S.W.2d 286, 289 (1968)

("[E]very presumption must be in favor of the regularity of the proceedings and the validity of the orders and judgment in the lower court, except where the record affirmatively shows otherwise.").

Accordingly, the judgment of the trial court is affirmed.