IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs December 15, 2015


**STATE OF TENNESSEE v. VALDEZ DOMINGO WILSON**

**Appeal from the Criminal Court for Knox County**
**No. 101723     Steven Wayne Sword, Judge**

_____

**No. E2015-01009-CCA-R3-CD – Filed February 11, 2016**

_____


Appellant, Valdez Domingo Wilson, pleaded guilty to possession with intent to sell more than twenty-six grams of a substance containing cocaine, possession with intent to sell not less than one-half ounce but not more than ten pounds of marijuana, possession with intent to sell less than 200 grams of a Schedule II controlled substance, and possession of drug paraphernalia.  Appellant received a total effective sentence of ten years in confinement.  As part of the plea agreement, appellant reserved a certified question of law that challenged the denial of his motion to suppress.  On appeal, he argues that the trial court improperly denied his motion to suppress evidence discovered in his vehicle and home.  Following our review of the briefs, the record, and the applicable law, we dismiss appellant's appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed.**

ROGER A. PAGE, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and D. KELLY THOMAS, JR., JJ., joined.

Joseph Liddell Kirk (on appeal) and M. Jeffrey Whitt (at suppression hearing), Knoxville, Tennessee, for the Appellant, Valdez Domingo Wilson.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Charme P. Allen, District Attorney General; and Philip H. Morton, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Appellant was charged with possession with intent to sell more than twenty-six grams of a substance containing cocaine, a Class B felony; possession with intent to deliver more than twenty-six grams of cocaine, a Class B felony; possession with intent to sell not less than one-half ounce but not more than ten pounds of marijuana, a Class E felony; possession with intent to deliver not less than one-half ounce but not more than ten pounds of marijuana, a Class E felony; possession with intent to sell less than 200 grams of a Schedule II[1] controlled substance, a Class B felony; possession with intent to deliver less than 200 grams of a Schedule II[2] controlled substance, a Class B felony; and possession of drug paraphernalia, a Class A misdemeanor.

I. Facts

Appellant filed a motion to suppress on October 17, 2014, and a suppression hearing was held on October 30, 2014. At the hearing, Brandon Anderson Glover, an investigator with the Knoxville Police Department, testified that prior to April 30, 2013, he had been investigating the activities of appellant. As part of the investigation, a confidential informant purchased crack cocaine from appellant, at which time Investigator Glover identified appellant and discovered that appellant drove a Dodge Durango. Officers also obtained appellant's telephone number.

On April 29, 2013, another individual ("CI") was arrested on unrelated drug charges and allowed police officers to examine the contents of his cellular telephone. The officers found appellant's name and telephone number in the cellular telephone. In response, the CI agreed to call appellant for "the purpose of purchasing crack cocaine." A total of four calls took place between the CI and appellant, all of which were recorded by law enforcement. Investigator Glover explained that during the first call, the CI discussed where to meet and for what purpose. When asked, "What was the purpose of the meeting that was discussed on the telephone call," Investigator Glover responded, "The purpose of the meeting was for that individual to purchase crack cocaine from the defendant." Investigator Glover testified that the CI and appellant agreed to meet in Room 232 at a Motel 6 in Knoxville. Officers went to the motel beforehand to await appellant's arrival. When a vehicle pulled in, Investigator Glover recognized the make, model, and color as being the same as the vehicle that appellant had used in a prior

---

[1] Oxycodone is a Schedule II controlled substance. *See* Tenn. Code Ann. § 39-17-408(b)(1)(M).

[2] This count originally stated that the controlled substance was Oxycodone; however, the indictment shows that the indictment was orally amended to reference Morphine rather than Oxycodone. Morphine is a Schedule II controlled substance. *See* Tenn. Code Ann. § 39-17-408(b)(1)(M).

-2-

transaction. The vehicle was also registered to appellant. Investigator Glover explained that based on his previous knowledge of appellant and the recorded telephone conversations with the CI, he "believed that there was a high likelihood that there were drugs in that vehicle." Investigator Glover stated that in a prior transaction, appellant had sold four to five grams of cocaine to an informant. Law enforcement officers then approached appellant and asked for consent to search appellant's vehicle, which appellant granted. During the search, officers found 1.8 grams of crack cocaine. During a subsequent conversation, after appellant had waived his *Miranda* rights, appellant admitted that he had marijuana in his residence. As a result, appellant provided the officers with written consent to search his home. Officers found 31.2 grams of crack cocaine, 463.8 grams of marijuana, 12 tablets of Roxicodone, and items used in the production of crack cocaine. Appellant admitted selling drugs to "support his son's ability to play AAU basketball."

During cross-examination, Investigator Glover testified that there were approximately six police officers at the scene when appellant was apprehended. He also conceded that the officers would not have had probable cause had it not been for the recorded telephone calls between the CI and appellant. After defense counsel played the four recorded telephone calls, Investigator Glover agreed that there had been no mention of drugs, quantity, or an exchange of money during any of the calls. However, Investigator Glover asserted that he "didn't feel that they would meet at all unless that individual was going to purchase drugs from appellant." Investigator Glover acknowledged that he had investigated appellant in an unrelated drug case and that he had never used the CI in this case before. Investigator Glover agreed that they could have waited until the CI and appellant had met and made a drug exchange but that the officers collectively decided to apprehend appellant before he entered the motel.

During re-direct examination, Investigator Glover explained that the CI had told officers that he could buy cocaine from appellant and that he had purchased cocaine from appellant in the past. Also, during an interview after appellant's arrest, appellant admitted that the CI was an individual to whom he sold drugs. Investigator Glover testified that based on his experiences as an officer, phrases in the telephone conversations like, "Can I run into you shortly" and, "I'm where you need me to be," indicated to him that the CI and appellant were arranging a narcotics transaction. Investigator Glover testified that it did not surprise him that neither narcotics nor a monetary exchange were mentioned during the calls and asserted that the two men also did not mention meeting for a lawful purpose.

In a written order, the trial court denied appellant's motion to suppress and stated the following:

In the present case, the officers had probable cause based upon specific and articulable facts to believe that the Defendant's automobile contained contraband. Officer Glover had recently purchased cocaine through a CI from the Defendant. He knew what vehicle the Defendant drove. Another criminal suspect also implicated the Defendant in the trafficking of cocaine. The officers listened in on phone calls while this person set up a buy from the Defendant. The slang and context used during these conversations indicated to the officers, based upon their training and experience, that the Defendant would meet the buyer at a specific location and time to conduct a drug transaction.

The Defendant arrived at the designated hotel in the designated parking area at the designated time. He was driving a vehicle known by Officer Glover to be driven in the past by the Defendant. At that point, the officers had probable cause to believe that the vehicle contained cocaine. There was no need for the officers to wait until the Defendant went to a specific room. The officers were justified in seizing the Defendant and searching the vehicle, regardless of his consent. The fact that the Defendant consented just gives further justification for the search of his car. The subsequent search of his residence was valid upon his separate voluntary consent. The seizure at that point was justified, as well as the request for consent to search his vehicle and residence.

Appellant subsequently pleaded guilty to possession with intent to sell more than twenty-six grams of a substance containing cocaine, possession with intent to sell not less than one-half ounce but not more than ten pounds of marijuana, possession with intent to sell less than 200 grams of a Schedule II controlled substance, and possession of drug paraphernalia. Appellant received a total effective sentence of ten years in confinement. As part of the negotiated plea agreement, appellant reserved the following certified questions of law:

Whether the officers were justified in the warrantless stop, detention, and subsequent search and arrest of the Defendant.

Whether the subsequent consent to search the car and residence was itself fruit of the poisonous tree because it was made during and directly resulted from the illegal detention.

## II. Analysis

On appeal, appellant argues that the warrantless seizure of appellant was unjustified and that appellant's consent to search his vehicle and residence was invalid

because it arose from the unlawful seizure. The State responds that appellant's certified questions were overly broad, that appellant failed to provide an adequate record on appeal, that the officers had probable cause to search appellant's vehicle, and that appellant's consent to search his vehicle and residence was valid.

As a threshold matter, appellant must have properly reserved the certified question before this court has jurisdiction to consider the merits of the question. The State argues that appellant's certified questions are overly broad because appellant failed to identify whether he believes the officers lacked reasonable suspicion or probable cause to seize him and his property and because appellant failed "to limit the question to a specific federal or state constitutional principle, rule of criminal procedure, or ruling from an appellate court." Rule 3(b)(2) of the Tennessee Rules of Appellate Procedure permits a defendant to plead guilty while reserving the right to appeal a certified question of law that is dispositive of the case. In doing so, a defendant must also comply with the requirements of Rule 37(b)(2)(A) of the Tennessee Rules of Criminal Procedure. The State's argument specifically addresses Rule 37(ii), which requires that "the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved." Tenn. R. Crim. P. 37(b)(2)(A)(ii).

Our courts have explicitly addressed this prerequisite and defined its parameters to an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a [Tennessee Rule of Appellate Procedure] 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case.

*State v. Bowery*, 189 S.W.3d 240, 245 (Tenn. Crim. App. 2004) (internal quotation marks omitted) (quoting *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988)). The *Preston*

requirements are mandatory. *Bowery*, 189 S.W.3d at 245-46 (citing *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996)). The burden of "reserving, articulating, and identifying the issue" rests solely on the defendant. *Pendergrass*, 937 S.W.2d at 838. Failure to comply with the requirements results in dismissal of the appeal. *Bowery*, 189 S.W.3d at 245-46 (citing *Pendergrass*, 937 S.W.2d at 837). Our supreme court has rejected a rule of substantial compliance and required strict compliance with *Preston*. *State v. Armstrong*, 126 S.W.3d 908, 912 (Tenn. 2003) (citations omitted).

After thorough consideration, we conclude that appellant's certified question is overly broad and does not clearly identify the scope and limits of the legal issue reserved. As this court stated in *Bowry*, the reasons relied upon by defendant in the trial court must be identified in the certified question. However, appellant failed to do so. Appellant failed to state the reasons he believed the stop was illegal. The question also does not reference the legal principles upon which appellant relies. For example, appellant failed to mention reasonable suspicion, probable cause, the automobile exception to the warrant requirement, or even the Fourth Amendment, all of which were relied upon in the briefing in this case. Rather than a clearly-defined statement of the issue, the question reserved is much more analogous to the questions reserved in *State v. James F. Mason* and *State v. Randall Cagle*, which this court determined were overly broad. In *State v. James F. Mason*, the defendant reserved the following question: "Whether the magistrate had probable cause in the issuance of the search warrant in this case." No. M2010-01350-CCA-R3-CD, 2011 WL 856934, at *2 (Tenn. Crim. App. Mar. 1, 2011). This court determined that "[t]he question as posed [did] not mention a confidential informant, reliability, staleness, or a sufficient nexus, all of which would presumably be central to the [d]efendant's claim. As framed, the question [was] quite nonspecific and fails to clearly identify the scope and limits of the legal issue reserved." *Id*. at *4. Similarly, in *State v. Randall Cagle*, the appellant reserved the following certified question: "Whether the search warrant affidavit established probable cause." No. M2013-00728-CCA-R3-CD, 2013 WL 6122379, at *2 (Tenn. Crim. App. Nov. 20, 2013). This court concluded that the certified question was overly broad because "the defendant failed to identify the reasons he believed probable cause to be insufficient. He does not mention the staleness of the facts or the existence of a sufficient nexus between the place to be searched and criminal activity, both of which he argues in his brief." *Id.* at *3 The court further stated, "As posed, the question would require this court to essentially conduct a complete overview of the plethora of reasons a search warrant affidavit could lack probable cause." *Id.* However, we note that even these two certified questions are more specific than the questions reserved by appellant because they limit the analysis to the validity of a probable cause determination by a magistrate. Appellant's questions, as drafted, require a comprehensive analysis of the law surrounding warrantless searches and seizures as applied to appellant's case.

We also note that in appellant's brief, he argues that the CI was a criminal informant; therefore, his representations are only considered reliable if his basis of knowledge and veracity are corroborated with additional facts. *See State v. Jacumin*, 778 S.W.2d 430 (Tenn. 1989). This issue is not reserved in the certified question of law, and while this issue was mentioned during the suppression hearing, the trial court did not address or rule on this issue. As this court in *Bowry* stated, "review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question." 189 S.W.3d at 245.

For the reasons stated above, we conclude that appellant's certified question is overly broad and does not clearly identify the scope and limits of the legal issue reserved. As such, we are without jurisdiction to consider the appeal because appellant failed to properly reserve his certified question of law.

## CONCLUSION

Based on the parties' briefs, the record, and the applicable law, we dismiss appellant's appeal.

_____
ROGER A. PAGE, JUDGE