IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
July 15, 2020 Session

**STATE OF TENNESSEE v. JANICE A. CAMPBELL**

**Appeal from the Circuit Court for Franklin County**
**No. 18-CR-446     Thomas W. Graham, Judge**

———————————————————

**No. M2019-01730-CCA-R3-CD**

———————————————————

As part of a guilty plea to driving under the influence ("DUI"), Defendant, Janice A. Campbell, reserved a certified question for appeal pursuant to Tennessee Rule of Criminal Procedure 37(b)(2)(A). She asks this Court to determine whether her arrest for DUI in a private home without a warrant violated Tennessee Code Annotated section 40-7-103 when Defendant was arrested without being seen by an officer operating the vehicle in question and no vehicle accident was involved. After a review, we determine that the certified question is not dispositive. Consequently, the appeal is dismissed.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT L. HOLLOWAY, JR., JJ., joined.

Jerre M. Hood, Winchester, Tennessee, for the appellant, Janice A. Campbell.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Mike Taylor, District Attorney General; and Steven M. Blount, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Preliminary Hearing*

At the preliminary hearing, Deputy Martin Tyler of the Franklin County Sheriff's Office testified that he was working second shift on June 2, 2018, when he received a dispatch request to go to a local liquor store, TJ's Liquor, to "make contact with a gray Buick" driven by Defendant. Neither Defendant nor the vehicle were located at the

liquor store. A second dispatch about the same vehicle and the same person sent Deputy Tyler to an address on Clark Road. When Deputy Tyler arrived at the home on Clark Road, he spoke to Micki Peters,[1] Defendant's daughter, who informed him that Defendant had "just left right prior to [his arrival] . . . was probably going to an address on Round the Mountain Road." Deputy Tyler went to the home described by Ms. Peters where he spoke with the homeowner about Defendant. Based on this discussion, Deputy Tyler went inside the home where he saw Defendant sitting down in a chair "behind a door." The deputy asked Defendant to stand up. The pair walked outside to talk. Deputy Tyler described Defendant as "unstable on her feet" and noted that he smelled alcohol coming from her person. Deputy Tyler explained that Defendant told him that she had been at the house for a few minutes and that she admitted she had consumed alcohol, specifically George Dickel. Deputy Tyler asked Defendant to perform some field sobriety tests, which she "tested poorly on." Defendant submitted to a breathalyzer test at the jail. The test was "unsatisfactory. [Defendant] wasn't able to blow hard enough for the test to pick up." Defendant was taken to the hospital for a blood draw where a blood test revealed that her blood alcohol level was .19.

Deputy Tyler admitted that he did not see Defendant drive the vehicle or commit an offense in his presence. Deputy Tyler also admitted that he did not get a warrant for Defendant's arrest. In fact, the State stipulated that Deputy Tyler did not give *Miranda* warnings to Defendant at the time Defendant made the admission that she was driving the vehicle. At the conclusion of the hearing, the trial court bound the matter over to the grand jury.

In November of 2018, Defendant was indicted by a Franklin County Grand Jury for two counts of DUI. In Count One, Defendant was indicted for driving with an alcohol concentration of .08 or greater, DUI per se. In Count Two, Defendant was alternatively indicted for driving under the influence of an intoxicant.

On January 9, 2019, Defendant filed a motion to suppress in which she argued that she was "wrongfully arrested without a warrant for a misdemeanor offense not committed in the presence of the officer" and that she was in a private residence, not on a public road at the time of her arrest. As a result, Defendant argued that any lab results should be suppressed and her charges should be dismissed. On February 12, 2019, Defendant filed a motion to dismiss the indictment "and/or" suppress the evidence based on an illegal arrest.

---

[1] Defendant's daughter was identified as "Nicki" in the preliminary hearing. She identified herself as Micki at the hearing on the motion to suppress. We will refer to her as Micki throughout our discussion of the case for consistency and clarity.

*Hearing on the Motion to Suppress*

On June 11, 2019, a hearing on the motions was conducted. Ms. Peters testified that she lived with her mother, Defendant, on Clark Road. Ms. Peters recalled that "there were words said" between Defendant, Ms. Peters, and Ms. Peters' husband on the day of the incident because Defendant was drinking. Ms. Peters told her she "need[ed] to stop drinking." In fact, Ms. Peters testified that her mother "starts drinking about 2:00 every day" and, on the day of the incident, Ms. Peters "took the bottle out of the back refrigerator in the pantry - - or in the utility room, and [] threw it down on the concrete sidewalk outside the back door." The bottle shattered. Defendant got into her car and drove away. Ms. Peters called police, and told them she suspected Defendant was headed toward TJ's liquor store.

Ms. Peters explained that their house was a "[f]ive to seven minute drive" from the liquor store. Ms. Peters testified that Defendant returned from the store, and pulled into the driveway in her vehicle. Ms. Peters told Defendant that she had "called the law because she should not have left drinking and driving." Defendant "got in her vehicle and she left" the house again, this time in the direction of her cousin's house. Ms. Peters called the police. "Within four to five minutes" Deputy Tyler arrived at the house. Ms. Peters explained to the officer that she suspected Defendant went to a home on Round the Mountain Lane.[2] Deputy Tyler left in his car toward the direction of Round Mountain Lane.

Deputy Tyler testified that he received a call from dispatch about a possible DUI at about 6:45 p.m. He went to TJ's Liquor Store and looked for a "gray Buick." He did not see the vehicle. He received a second dispatch that the vehicle had returned to Clark Road at 7:08 p.m. Deputy Tyler arrived at the home on Clark Road at 7:11 p.m. where he spoke with Defendant's daughter, Ms. Peters. Based on information he received from Ms. Peters, Deputy Tyler went to a house on Round the Mountain Lane. He arrived at 7:13 p.m. where he saw the gray Buick. There was a vehicle in front of him that pulled up to the home where the Buick was parked. The person driving the vehicle was the owner of the residence. Deputy Tyler explained that he was looking for Defendant. Defendant was inside the house behind the door, "sitting . . . to the left in a chair." Deputy Tyler explained to Defendant why he was at the house and asked her to come outside to talk. Defendant "was very unsteady on her feet" as she stood up and Deputy Tyler could smell alcohol on her person. Deputy Tyler also saw an unopened "half gallon of George Dickel" in Defendant's vehicle. Deputy Tyler asked Defendant to

---

[2] At the preliminary hearing, Deputy Tyler refers to this street as "Round the Mountain Road." Mrs. Peters refers to it as "Round the Mountain Lane." There is nothing in the record to indicate that these are two different locations.

perform several field sobriety tasks and, in his opinion, she was unable to perform them in a satisfactory manner. Deputy Tyler placed Defendant in custody for DUI. Defendant agreed to submit to a breathalyzer test. Deputy Tyler transported Defendant to the jail where she was unable to successfully complete a breathalyzer test because she could not figure out the difference between blowing into the device and sucking on the device. Defendant agreed to give a blood sample and was transported to the hospital where her blood was drawn. Defendant's blood alcohol level was .19.

Deputy Tyler admitted that he did not administer *Miranda* warnings to Defendant and that no one secured an arrest warrant prior to Defendant's arrest despite the fact that officers had twenty-four hour access to a magistrate. Additionally, he agreed that prior to attempting the field sobriety tasks Defendant reported "[f]rom her neck down she had had some medical issues."

At the conclusion of the hearing, the trial court determined that the police initiated an investigation after a report of a possible DUI. The trial court determined that officers "followed [the report] up in the normal manner and that the - - [Defendant] did give permission and apparently [the officers] have a written waiver where she gave permission for the blood draw." The trial court denied the motion to suppress.

*Guilty Plea*

On August 29, 2019, Defendant entered a guilty plea to Count Two of the indictment, DUI while under the influence of an intoxicant. Count One, DUI with a blood alcohol level of .08 or greater, was dismissed. Counsel for the State informed the trial court that, had the case gone to trial, the proof would have shown as follows:

> [O]n the date of this incident set out in the indictment that [Defendant's] daughter was concerned because [Defendant] had consumed a large quantity of alcohol. She indicated [Defendant] was going to the liquor store to buy more, and left in a vehicle. She called the sheriff's department[.] [S]he described the vehicle, described her mother, [and] told them of her concern. The sheriff's deputy would testify that he immediately went to the liquor store that the daughter felt that she would be going to. By the time he arrived the -- [Defendant] was not there. At that time, Your Honor, the dispatch indicated that the daughter was calling back that [Defendant] was now back at the house. [Defendant's daughter] was concerned because she did come back with alcohol. She called the police to say come back here, she's here. The officers then responded back to [Defendant's] residence. When they arrived there, Your Honor, [Defendant's] daughter indicated that once again, her mother had driven

off, told them the direction that [Defendant] went and actually told them the residence that she believed that [Defendant] would be going to. The officers at that point responded in that direction. The officer testified, under oath, I believe at the hearing here that he arrived at the scene. That the vehicle that the -- that was specifically described to him by the daughter was there. He got out, was beginning to approach the house, and at that point another vehicle arrived, which he discovered would be the owner of the house that he was at, explained the situation to that individual. They went up to the house, [Defendant] was in the house. [The officer] asked if he could talk with her. He would say that [Defendant] appeared unsteady on her feet, and based on the totality of the circumstances, took her into custody for DUI. Based primarily on the information that had been provided by the daughter who saw [Defendant] operate a vehicle, saw her condition, and as corroborated by the officer, seeing the car there, and also basically corroborating her condition, and they charged her for DUI….

Defendant agreed with the factual basis for the plea. As part of the guilty plea, Defendant reserved the following certified question pursuant to Tennessee Rule of Criminal Procedure 37: "Whether the arrest of the defendant for DUI in a private home without a warrant violated T.C.A. 40-7-103 when the defendant was arrested without being seen by an officer operating the vehicle in question and no vehicle accident was involved." The parties and the trial court agreed that the issue would be dispositive of the case.

This appeal followed.

*Analysis*

On appeal, Defendant argues that "the officer had no authority under the facts of this case to effect an arrest of the defendant and then to later obtain an arrest warrant." The State, on the other hand, argues that the certified question "is overly broad and not dispositive of her case."

Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that an appeal lies from any judgment of conviction upon a plea of guilty or nolo contendere if:

(A) [T]he defendant entered into a plea agreement under Rule 11(c) but explicitly reserved—with the consent of the state and of the court—the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

(i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;

(ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;

(iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and

(iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A).

Although the parties agreed that Defendant's certified question of law regarding the legality of his traffic stop was dispositive of the case, we are not bound by that determination. *See State v. Thompson*, 131 S.W.3d 923, 925 (Tenn. Crim. App. 2003). Instead, we "must make an independent determination that the certified question is dispositive." *State v. Dailey*, 235 S.W.3d 131, 135 (Tenn. 2007) (citation omitted). "An issue is dispositive when this Court must either affirm the judgment or reverse and dismiss." *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984).

Our courts have explicitly addressed Rule 37(b)(2)(A)(ii), which requires that "the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved." The parameters of the rule define an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a [Tennessee Rule of Appellate Procedure] 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in

> the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State, nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case.

*State v. Bowery*, 189 S.W.3d 240, 245 (Tenn. Crim. App. 2004) (internal quotation marks omitted) (quoting *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988)). The *Preston* requirements are mandatory. *Id.* at 245-46 (citing *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996)). The burden of "reserving, articulating, and identifying the issue" rests solely on the defendant. *Pendergrass*, 937 S.W.2d at 838. Failure to comply with the requirements results in a dismissal of the appeal. *Bowery*, 189 S.W.3d at 245-46 (citing *Pendergrass*, 937 S.W.2d at 837). Our supreme court has rejected a rule of substantial compliance and required strict compliance with *Preston*. *State v. Armstrong*, 126 S.W.3d 908, 912 (Tenn. 2003) (citations omitted).

The certified question presented in the order accompanying the judgment form is as follows: "Whether the arrest of the defendant for DUI in a private home without a warrant violated T.C.A. 40-7-103 when the defendant was arrested without being seen by an officer operating the vehicle in question and no vehicle accident was involved." In our view, this question is not dispositive. A question is not dispositive "when there is additional, unchallenged evidence which could be used to support the conviction." *State v. Prince Dumas*, No. W2015-01026-CCA-R3-CD, 2016 WL 4083256, at *2 (Tenn. Crim. App. Aug. 1, 2016) (citing *State v. William Jeffery Sweet*, No. E2008-00100-CCA-R3-CD, 2009 WL 2167785, at *11 (Tenn. Crim. App. July 21, 2009), *no perm. app. filed*), *no perm. app. filed*. Here, Defendant pled guilty to DUI under the influence of an intoxicant, Tennessee Code Annotated section 55-10-401(1) and not DUI per se, Tennessee Code Annotated section 55-10-401(2). While we acknowledge that the officer in this case never saw Defendant drive the vehicle, there was testimony from Ms. Peters that Defendant was seen driving the vehicle under the influence of an intoxicant on at least two occasions within an hour prior to her arrest. This evidence would not be affected by the suppression motion. While in our view the better practice in this case would have been to secure a warrant for Defendant's arrest, the additional pieces of unchallenged evidence could be used to support Defendant's conviction. Defendant also fails to identify the trial court's holding on the suppression issues within the certified question. This Court has repeatedly held that failure to narrowly construe the issues and identify the trial court's holding in a certified question does not provide an adequate basis for our review. *See State v. Robert Glenn Hasaflook*, No. M2012-02360-CCA-R3-CD,

2013 WL 4859577, at *4 (Tenn. Crim. App. Set. 12, 2013) (citing several cases with similar holdings), *perm. app. denied* (Tenn. Jan. 15, 2014).

*Conclusion*

Because the certified question is not dispositive, the appeal is dismissed.


_____
TIMOTHY L. EASTER, JUDGE