IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 1, 2020

**TERRANCE MILAM v. STATE OF TENNESSEE**

**Direct Appeal from the Criminal Court for Shelby County**
No. 16-00558          **Carolyn Wade Blackett, Judge**

————————————————————

**No. W2019-01952-CCA-R3-PC**

————————————————————

The Petitioner, Terrance Milam, entered a best interest plea to two counts of rape of a child, involving two separate victims, and the trial court sentenced him to serve forty years, at 100%. The Petitioner filed a petition for post-conviction relief in which he alleged that he had received the ineffective assistance of counsel because his counsel failed to inform him of his right to appeal and to request that the trial court appoint appellate counsel. Following a hearing, the post-conviction court dismissed his petition, and the Petitioner timely appealed. After review, we reverse the post-conviction court's judgment and remand the case for the appointment of counsel, entry of a certified question of law, and grant of a delayed appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed
and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, J., joined.

Patrick E. Stegall, Memphis, Tennessee, for the appellant, Terrance Milam.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Sarah Michelle Poe, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the police finding the Petitioner in a parked vehicle in an elementary school parking lot at night with his waist straddled by a juvenile female. After a resulting search, law enforcement officers found pictures of two female victims,

M.R. and T.R.,[1] sisters who were both under the age of thirteen, performing oral sex on the Petitioner. A Shelby County grand jury indicted the Petitioner for four counts of rape of a child, two for each victim, and also for the rape of T.R. The grand jury also indicted the Petitioner's co-defendant, Catrina Boles, for the same offenses, also charging her with two additional counts of sexual exploitation and failing to report known or suspected child abuse.

On June 21, 2017, the Petitioner entered a best interest plea, pursuant to *Alford v. North Carolina*, 400 U.S. 25 (1970), to two counts of rape of a child, one for each victim. At the guilty plea hearing, the following occurred: the trial court asked the Petitioner if he recalled having his preliminary hearing and also a hearing on his motion to suppress, and the Petitioner answered affirmatively. The trial court went over the Petitioner's charges and the potential sentences if he were convicted at trial. The Petitioner agreed that the State had offered him forty years in exchange for his guilty plea to two counts of the indicted offenses. The Petitioner stated that he was going to accept the plea offer because he did not feel like he had effective assistance of counsel. The trial court reminded the Petitioner that he had been present for ten court dates and that this was the first time he was mentioning an issue with his attorney ("Counsel"). The trial court informed the Petitioner that she had not heard anything to justify the Petitioner's claim that counsel was ineffective, so the Petitioner's options were to enter the guilty plea or to set a date for trial.

The Petitioner and Counsel took a break to speak with one another, and the Petitioner returned to court and offered his *Alford* plea to two counts of rape of a child. Counsel stated that he wanted to reserve the right to appeal the motion to suppress and that the State did not oppose this. The State then presented the facts it would have proven had the case gone to trial:

> Had the mater gone to trial, the proof would have shown that on January 21, 2015, Officer Apell with the Memphis Police Department observed a vehicle parked in the Knight Road Elementary School after hours. He approached the vehicle and shined a light into it and observed what appeared to be a female juvenile straddling the waist of the driver. He had the driver step out of the vehicle. That was [the Petitioner].

> When [the Petitioner] did so, his pants fell down and he noticed that the [Petitioner's] genitals were exposed. The victim in the car, [M.R.] was

---

[1] To protect the privacy of minor victims, it is the policy of the court to refer to them by their initials only.

also attempting to pull her pants up. She was transported to Memphis Child Advocacy Center where she had a forensic interview.

She disclosed that the [Petitioner] picked her up from school, took her to the grocery store and then took her back to the school parking lot after hours. He told her to pull her pants down, took pictures of her genital area.

She also disclosed that he made her perform oral sex on him and this was something that he took a video of on his cell phone.

The police department obtained a search warrant for that phone where they discovered that video. They also discovered other photographs of the victim's sister. And through that investigation they did a search warrant of the home for further SD cards, computer and they turned that information over to the FBI.

The FBI then performed forensic examinations on the phones. They found images that showed that the victim, [M.R.], her sister [T.R.] also had performed oral sex on the [Petitioner]. The creation date on that appeared to be November of 2013. On November of 2013 [T.R.] was under the age of 13. And on January 2015 as to count one, [M.R.] was also under the age of 13.

The Petitioner stipulated that these facts were the State's proof. The Petitioner then testified that he understood each of the rights that he was waiving by entering a guilty plea, that he understood the charges to which he was pleading guilty, and that he understood the sentence he was accepting. He also understood that his sentence would run consecutively to the time that he faced for the federal crimes to which he had pled guilty. The Petitioner testified that his plea was voluntary and that no one had forced him to enter his plea or threatened him.

The trial court accepted the Petitioner's plea of guilty to two counts of rape of a child, and sentenced him to forty years for each count. The trial court ordered that the sentences run concurrently to each other, for a total effective sentence of forty years, with the sentence be served at 100%.

On June 22, 2018, the Petitioner filed a *pro se* petition for post-conviction relief. In it he alleged that Counsel had abandoned his representation of him. He also alleged a double jeopardy violation and "procedural misconduct." The post-conviction court appointed the Petitioner post-conviction counsel, who filed an amended petition for post-conviction relief. In it, he alleged that Counsel was ineffective because he failed to

appeal the trial court's denial of the motion to suppress or, in the alternative, ask to be relieved as attorney of record and notify the Petitioner of his right to proceed *pro se.*

At a hearing on the petition, the parties presented the following evidence: The Petitioner testified that he was currently incarcerated on a federal sentence that stemmed from the same case. He said that he pleaded guilty in federal court to the same charges, but he did not recall what sentence he received.

The Petitioner said that he and Counsel never had a relationship and that Counsel never sat down with him to formulate a strategy of defense. He said that the case was never properly investigated. The Petitioner testified that he asked Counsel to file a motion to suppress, and Counsel did so without consulting the Petitioner further. He said that his detention and arrest were illegal. The Petitioner agreed that he was present at the suppression hearing but stated that he did not understand what Counsel was seeking to have suppressed. During the hearing, the State and Counsel both spoke and the trial court considered the evidence from the preliminary hearing, but the Petitioner said no other evidence was presented.

The Petitioner testified that, after his motion to suppress was denied, he told the trial court that he did not have confidence in Counsel. The trial court, however, denied his request for a new attorney, which led to the Petitioner entering a guilty plea because he felt as if he had no other choice. The Petitioner said that he pleaded guilty with the understanding that Counsel would appeal the motion to suppress. The Petitioner said that he attempted to communicate with Counsel to no avail. He was unable to ascertain whether an appeal had been filed on his behalf.

During cross-examination, the Petitioner testified that he stated that he was satisfied with Counsel at the time that he entered his plea of guilty. The Petitioner agreed that it was his decision to plead guilty but said he did so because he did not want to go to trial with Counsel representing him.

Counsel testified that he had worked as a public defender for ten years and that he represented the Petitioner, being the second attorney appointed to the Petitioner. After appointment to the case, Counsel reviewed discovery with the Petitioner and discussed the facts surrounding the case. Counsel said that, at that time, the Petitioner had already filed a motion to suppress in Federal Court on his Federal charges and had already pleaded guilty in Federal Court, receiving 170 years for his Federal convictions.

Counsel said that the Petitioner told him that he had been arrested by an officer conducting a routine patrol of a public elementary school parking lot. The officer saw the Petitioner and an underage girl engaging in a sexual act. He arrested the Petitioner,

towed his car, and found his cell phone in his car. The cell phone was "loaded with child pornography and videos of [the Petitioner] and underage girls."

Counsel testified that he attempted to suppress the arrest and everything that officers found as a result of the arrest, arguing that the officer did not have any probable cause or reason to stop the Petitioner. Counsel said that he relied on the officer's preliminary hearing testimony because he was concerned that, if the officer testified at the hearing, his testimony might make it more difficult to succeed on the motion to suppress.

Counsel said that he did not represent clients on appeal, and he told the Petitioner as much. At the time, the Petitioner told him that it was fine because the Petitioner did not like Counsel anyway. Counsel told the Petitioner that he had one year to appeal, and the Petitioner said that he wanted to appeal it on his own, *pro se*. The Petitioner told Counsel that the Petitioner did not want Counsel on his case anymore.

Counsel testified that, when they were discussing whether the Petitioner should enter a guilty plea or go to trial, Counsel learned that the Petitioner's co-defendant and fiancé had secured her own plea agreement. It included her going into a mental health treatment, but she could not enter the agreement until the Petitioner's case was disposed of. The Petitioner told Counsel that he accepted the plea agreement so that his co-defendant could accept her plea deal.

Counsel said that he and the Petitioner discussed his case at length. The two talked about motions that the Petitioner wanted to file that Counsel said were frivolous, and he said that he explained why they were frivolous one by one. Counsel said that the two discussed the facts and circumstances of the case.

During cross-examination, Counsel testified that, while he did not meet with the Petitioner in jail, the two were together at every court date and discussed the Petitioner's case for "hours." Counsel said that he conducted his own investigation and also discussed the case with the Petitioner's Federal Defender.

Based upon this evidence, the post-conviction court denied the Petitioner's petition for post-conviction relief. The post-conviction court found:

> [The] Petitioner's initial claim of deficiency is that [Counsel] failed to adequately represent [the] Petitioner before and during the motion to suppress hearing. This claim includes several facets such as allegations that [Counsel] failed to meet with Petitioner on an adequate basis, [Counsel]

failed to communicate adequately with Petitioner, and [Counsel] failed to conduct due diligence during his investigation of the case.

As stated above, this Court recognized that [Counsel] met with Petitioner at roughly ten separate report dates prior to the motion to suppress hearing. Additionally, [Counsel] testified that prior to the Motion to Suppress hearing in January 2017, he met with [the] Petitioner in September, October, November and December 2016 for every report date. [Counsel] credibly asserts that during each of these settings, he had lengthy conversations with [the] Petitioner. Not only does [the] Petitioner fail to overcome the presumption that [Counsel] did not perform at least as well as a reasonable attorney, [the] Petitioner fails to show any manner in which counsel was deficient. [The] Petitioner accordingly fails the test to establish that he is entitled to post-conviction relief. Even if the first prong was met, [the] Petitioner does not point to a discernable manner in which this representation prejudiced him.

For the same reasons, [Counsel] did not provide deficient counsel through his communication concerning the case, or his investigation of the case. [Counsel] testifies to hours of phone and in-person communication with [the] Petitioner over the course of several months. And because [Counsel] had the benefit of [the] Petitioner's federal case already having a disposition, and because [Counsel] was the second state-attorney of record, [Counsel] had access to the research of two additional attorneys to utilize during the hearings. This Court finds that this amounts to adequate and sufficient representation.

Concerning the strategy employed during the hearing, [Counsel] references his adoption of the federal public defender's strategy combined with his own. [Counsel] also discusses weighing the benefits and drawbacks of presenting witness testimony as opposed to locking in the testimony of the arresting officer. Ultimately, [Counsel] made a decision based on legal knowledge, precedent, and strategy. For these reasons, [the] Petitioner fails to meet his burden on the issues regarding the Motion to Suppress hearing. For this claim, post-conviction relief is denied.

The second issue concerns the manner in which [Counsel] represented, or failed to represent, [the] Petitioner on appeal. The record of the Guilty Plea hearing indicates that this Court, along with [Counsel] and the State ensured that the right to appeal the Motion to Suppress hearing was explicitly reserved for [the] Petitioner. [The] Petitioner testifies that he

does not recall discussing his ability to appeal or the mechanism by which he would appeal but [Counsel] is able to define the conversation he had with [the] Petitioner. In the Post- Conviction hearing, [Counsel] explains that he informed [the] Petitioner that he would be able to appeal the hearing, but that he would not be the attorney on appeal should [the] Petitioner choose to exercise his right. [Counsel] also testifies that he explained that [the] Petitioner had the ability to bring his petition pro se, should [the] Petitioner choose to do so. Under these circumstances, the record favors the testimony provided by [Counsel] in this case, and thus favors a finding that [Counsel]'s counsel was not deficient.

Further, the Petitioner made it abundantly clear that [the] Petitioner did not want further representation from [Counsel]. [The] Petitioner says numerous times that he wanted different counsel and felt that [Counsel] was ineffective. Combined with the fact that [Counsel] does not practice appellate work for the Public Defender's Office of Shelby County, this Court cannot find that [the] Petitioner was prejudiced when [Counsel] does not represent [the] Petitioner on an appeal. [The] Petitioner, again, fails on both prongs of the ineffective assistance claim and thus Petitioner's second claim fails. Petitioner is not entitled to post-conviction relief on the appeals claim.

It is from these judgments that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that Counsel was ineffective for failing to properly refer the appeal of the court's denial of the motion to suppress to the appropriate attorney or attorneys in the Shelby County Public Defender's office. The State contends that the record supports the post-conviction court's finding that Counsel's representation was adequate and that the Petitioner was not prejudiced by Counsel's representation.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. T.C.A. § 40-30-103 (2018). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2018). Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts. *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999) (citing *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997)). A post-

conviction court's factual findings are subject to a *de novo* review by this Court; however, we must accord these factual findings a presumption of correctness, which can be overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely *de novo* review by this Court, with no presumption of correctness. *Id.* at 457.

The right of a criminally accused to representation is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. *State v. White*, 114 S.W.3d 469, 475 (Tenn. 2003); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The following two-prong test directs a court's evaluation of a claim for ineffectiveness:

> First, the [petitioner] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [petitioner] by the Sixth Amendment. Second, the [petitioner] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable. Unless a [petitioner] makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also State v. Melson*, 772 S.W.2d 417, 419 (Tenn. 1989).

In reviewing a claim of ineffective assistance of counsel, this Court must determine whether the advice given or services rendered by the attorney are within the range of competence demanded of attorneys in criminal cases. *Baxter*, 523 S.W.2d at 936. To prevail on a claim of ineffective assistance of counsel, "a petitioner must show that counsel's representation fell below an objective standard of reasonableness." *House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (citing *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)).

When evaluating an ineffective assistance of counsel claim, the reviewing court should judge the attorney's performance within the context of the case as a whole, taking into account all relevant circumstances. *Strickland*, 466 U.S. at 690; *State v. Mitchell*, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). The reviewing court should avoid the "distorting effects of hindsight" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689-90. In doing so, the reviewing court must be highly

deferential and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Burns*, 6 S.W.3d at 462. Finally, we note that a defendant in a criminal case is not entitled to perfect representation, only constitutionally adequate representation. *Denton v. State*, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). In other words, "in considering claims of ineffective assistance of counsel, 'we address not what is prudent or appropriate, but only what is constitutionally compelled.'" *Burger v. Kemp*, 483 U.S. 776, 794 (1987) (quoting *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984)). Counsel should not be deemed to have been ineffective merely because a different procedure or strategy might have produced a different result. *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). "'The fact that a particular strategy or tactic failed or hurt the defense, does not, standing alone, establish unreasonable representation. However, deference to matters of strategy and tactical choices applies only if the choices are informed ones based upon adequate preparation.'" *House*, 44 S.W.3d at 515 (quoting *Goad*, 938 S.W.2d at 369).

If the petitioner shows that counsel's representation fell below a reasonable standard, then the petitioner must satisfy the prejudice prong of the *Strickland* test by demonstrating "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Nichols v. State*, 90 S.W.3d 576, 587 (Tenn. 2002). This reasonable probability must be "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Harris v. State*, 875 S.W.2d 662, 665 (Tenn. 1994). In the context of a guilty plea, as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of *Strickland*, the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (footnote omitted); *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

Before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. *State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977); *see also Boykin v. Alabama*, 395 U.S. 238, 242 (1969). In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass[ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." *Boykin*, at 244; *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn.1999). Further, the Court has explained that "a plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats,'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43), or if the defendant is "incompetent or otherwise not in control of [his] mental facilities" when the plea is entered. *Id.* at 904 (quoting *Brown v. Perini*, 718 F.2d 784, 788 (6th Cir. 1983)). In determining whether a plea is knowing and

voluntary the court should examine the totality of the circumstances, including the following factors:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Powers v. State*, 942 S.W.2d 551, 556 (Tenn. 1996) (quoting *Blankenship*, 858 S.W.2d at 904).

In the case under submission, we cannot agree with the post-conviction court's finding that the record of the guilty plea indicated that Counsel and the State ensured the Petitioner's right to appeal the Motion to Suppress hearing. Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that an appeal lies from any judgment of conviction upon a plea of guilty or nolo contendere if:

> (A) [T]he defendant entered into a plea agreement under Rule 11(c) but explicitly reserved—with the consent of the state and of the court—the right to appeal a certified question of law that is dispositive of the case, and the following requirements are met:
>
> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;
>
> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;
>
> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
>
> (iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]

Tenn. R. Crim. P. 37(b)(2)(A).

Our courts have explicitly addressed Rule 37(b)(2)(A)(ii), which requires that "the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved." The parameters of the rule define an appellate court's consideration of the merits of a question of law certified pursuant to Rule 37(b)(2):

> Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, the final order or judgment from which the time begins to run to pursue a [Tennessee Rule of Appellate Procedure] 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State, nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case.

*State v. Bowery*, 189 S.W.3d 240, 245 (Tenn. Crim. App. 2004) (internal quotation marks omitted) (quoting *State v. Preston*, 759 S.W.2d 647, 650 (Tenn. 1988)). The *Preston* requirements are mandatory. *Id*. at 245-46 (citing *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996)). The burden of "reserving, articulating, and identifying the issue" rests solely on the defendant. *Pendergrass*, 937 S.W.2d at 838. Failure to comply with the requirements results in a dismissal of the appeal. *Bowery*, 189 S.W.3d at 245-46 (citing Pendergrass, 937 S.W.2d at 837). Our supreme court has rejected a rule of substantial compliance and required strict compliance with *Preston*. *State v. Armstrong*, 126 S.W.3d 908, 912 (Tenn. 2003) (citations omitted).

In this case, Counsel did not preserve the certified question regarding the Petitioner's motion to suppress. The judgment of conviction contains a comment in which it states that the Petitioner reserves the right to appeal the motion to suppress, but there was no certified question articulated by the Petitioner or entered by the trial court. Under these circumstances, and since it is the Petitioner's duty to so prepare the certified question, the Petitioner's appeal would have been dismissed for failing to comport with

the requirements as articulated in *Preston*, even had Counsel properly referred the case to the attorney who handled appeals in the Public Defender's Office. We conclude that Counsel was ineffective for failing to properly preserve the Petitioner's right to appeal his motion to suppress.

The issue then becomes to what relief is the Petitioner entitled. We agree with the post-conviction court that the Petitioner knowingly and voluntarily entered his guilty plea based upon his right to appeal his motion to suppress. Accordingly, we remand this case for the trial court to appoint counsel and enter a certified question in accordance with Tennessee Rule of Criminal Procedure 37(b)(2)(A) regarding the motion to suppress. The trial court shall then grant the Petitioner a delayed appeal of the certified question.

## II. Conclusion

In accordance with the aforementioned reasoning and authorities, we reverse the post-conviction court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE